UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BEASLEY INSURANCE COMPANY, INC, et al., | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) Case No. 4:18-CV-01689-AGF ) |
| BROWN & JAMES, P.C., et al., | ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

This matter is before the Court on the motions (ECF Nos. 99 & 101) to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendants Brown & James, P.C. and Joseph R. Swift (collectively "Brown & James"), and Armstrong Teasdale, LLP and William Ray Price (collectively "Armstrong"). For the reasons set forth below, the Court will grant the motions in part and deny them in part.[1]

# BACKGROUND

Plaintiffs Beazley Insurance Company, Inc. and Beazley Underwriting Ltd. on behalf of Certain Underwriters at Lloyd's, London, doing business as Syndicate 2623 (collectively "Beazley") filed this legal malpractice action in the United States District Court for the Southern District of New York on March 13, 2018. The case was

---

[1] These motions address Plaintiffs' second amended complaint (ECF No. 97), which the Court ordered Plaintiffs to file in order to cure certain jurisdictional allegations. *See* ECF No. 92. With the permission of the Court, Defendants incorporated by reference the arguments raised in their previously-filed motions to dismiss the first amended complaint. Those previously-filed motions (ECF Nos. 77 and 79) will now be denied as moot. Plaintiffs have likewise incorporated by reference their previously-filed opposition brief.

transferred to this Court on October 3, 2018. The action arises out of Defendants' allegedly negligent handling of a lawsuit for personal injuries against Beazley's insured, Gateway Ambulance Service, LLC ("Gateway").

The following facts are taken from the second amended complaint. The Court also takes "judicial notice of the opinions and orders from [the underlying lawsuit and related litigation], including the facts of what issues and claims were litigated, although [the Court does] not accept as true any historical facts found in those decisions that would be material to the issues here." *See PPW Royalty Tr. by & through Petrie v. Barton*, 841 F.3d 746, 753 (8th Cir. 2016), as amended (Oct. 28, 2016) (standard on a motion to dismiss a legal malpractice claim).

On July 1, 2011, Jean-Robert Nast was injured while being transported to a medical appointment by Gateway. Nast alleged that Gateway employees were responsible for his injuries. On April 24, 2014, Nast filed suit against Gateway in the Circuit Court for the City of St. Louis (the "Nast Litigation"). Nast asserted multiple claims and demanded $46,030,862 in damages.

During the course of the Nast Litigation, Beazley twice offered the full policy limits of $1 million in settlement of Nast's claims against Gateway (once during a June 2014 mediation and again by letter sent June 30, 2014), which Nast rejected. After a failed mediation and at Gateway's request for a change of counsel, Beazley hired Brown & James to represent Gateway in the Nast Litigation. Defendant Joseph Swift was the Brown & James partner in charge of the Nast Litigation. Beazley alleges that Brown & James represented Gateway and Beazley beginning in October 2014.

2

On Friday, June 5, 2015, Brown & James received notice from the trial court in the Nast Litigation that a bench trial was set to begin on the following Monday, June 8, 2015. Swift was also notified by Gateway on Friday, June 5, 2015, that Gateway had entered into a settlement agreement with Nast pursuant to Missouri Revised Statute § 537.065 (the "065 Agreement").[2] "An agreement under this provision expressly authorizes an insured to settle a personal injury or wrongful death action by agreeing that the plaintiff may collect the settlement only against the insurer." *Allstate Ins. Co. v. Blount*, 491 F.3d 903, 907 (8th Cir. 2007) (citation omitted). "It does not determine the insured's liability but merely limits enforceability of a judgment." *Id.* (citation omitted).

---

[2] At the time, § 537.065 provided, in relevant part:

> Any person having an unliquidated claim for damages against a tort-feasor, on account of bodily injuries or death, may enter into a contract with such tort-feasor or any insurer in his behalf or both, whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tort-feasor, neither he nor any person, firm or corporation claiming by or through him will levy execution, by garnishment or as otherwise provided by law, except against the specific assets listed in the contract and except against any insurer which insures the legal liability of the tort-feasor for such damage and which insurer is not excepted from execution, garnishment or other legal procedure by such contract.

Mo. Rev. Stat. § 537.065 (2015).

The statute was amended, effective August 28, 2017, to add, in relevant part, that:

> Before a judgment may be entered against any tort-feasor after such tort-feasor has entered into a contract under this section, the insurer or insurers shall be provided with written notice of the execution of the contract and shall have thirty days after receipt of such notice to intervene as a matter of right in any pending lawsuit involving the claim for damages.

Mo. Rev. Stat. § 537.065 (Aug. 28, 2017).

3

In light of the 065 Agreement, Gateway informed Swift that it would not need Brown & James to defend Gateway at the bench trial scheduled for Monday. Swift then requested permission from Gateway to inform Beazley of the 065 Agreement, saying he "may have to let [Beazley] know regardless of [Gateway's] direction" and that he was still "mulling that [decision] over." ECF No. 97 at 18. Gateway responded that it did "not object to [Brown & James] telling Beazley simply that there is a hearing at 1:30 on Monday and that [Brown & James] ha[d] been instructed to withdraw when business opens Monday." ECF 97 at 18. On Monday, June 8, 2015 at 8:17 a.m, Swift sent an email informing Beazley of the 065 Agreement and that a hearing was to take place that day.

A bench trial commenced on Monday, June 8, 2015. Brown & James did not appear at the trial. Instead, Beazley retained another attorney to move to intervene on its behalf. *See* ECF No 85 at 6. Through that attorney, Beazley made an oral motion to intervene and to continue the hearing.[3] The trial court denied the oral motion.

The Court has reviewed the transcript of the bench trial.[4] Through its attorney, Beazley argued that, notwithstanding Missouri caselaw holding that a liability insurer had no right to intervene in similar cases, Beazley should be allowed to intervene in the Nast Litigation. Beazley argued that the Missouri caselaw was distinguishable because, unlike

---

[3] The attorney who made the oral motion on Beazley's behalf is not named as a defendant in this lawsuit.

[4] Armstrong also attached an excerpt of the transcript, including Beazley's oral motion and the trial court's ruling, to its reply brief. ECF No. 88-1.

4

the insurers in those cases, Beazley never ceased providing a defense to its insured, Gateway.

Nevertheless, the trial court determined that Gateway and Nast had "a right to go forward" with the 065 Agreement and that nothing in § 537.065 allowed Beazley to prevent its insured from entering into such an agreement. ECF No. 88-1 at 7. The trial court further stated that the question of "who pays what and how much" was not currently in front of the court and could instead "be raised at a later time." *Id.* The trial court thus denied Beazley's oral motion to intervene and proceeded to a bench trial at which Nast presented evidence and Gateway offered no defense. The trial court ultimately found Gateway liable to Nast and awarded Nast $24,915,604 in damages, which was half of his demand.

On June 9, 2015, the trial court in the Nast Litigation entered its "Order and Final Judgment," a copy of which is attached to Armstrong's motion to dismiss (ECF No. 80-1). The trial court noted that "[t]he attorney for [Nast] submitted a time limit demand to [Gateway] and [Beazley]. [Beazley] did not respond to the time limit demand, so [Nast] and [Gateway] subsequently entered into a contract to limit recovery pursuant to § 537.065 RSMo."[5] ECF No. 80-1 at 1. The trial court found that the agreement did not contain any admission of liability or agreement as to damages but submitted those issues for the court to decide based upon the evidence. The trial court found that the 065 Agreement was made in good faith and was fair and reasonable. *Id.*

---

[5] As noted above, Beazley alleges that it twice offered to pay the policy limits to settle the Nast Litigation, which Nast rejected. But Beazley does not allege whether these offers were made after any time-limit demand from Nast expired.

5

The same day that Judgment was entered in the Nast Litigation, Nast filed an equitable garnishment action and claim for bad faith against Beazley in the Circuit Court for the City of St. Louis. Beazley filed its answer and affirmative defenses on July 20, 2015, claiming that Gateway breached its contractual duties to cooperate and to act in good faith by entering the 065 Agreement and that, therefore, the judgment in the Nast Litigation could not be enforced against Beazley.[6]

Meanwhile, Beazley filed a notice of appeal of the trial court's denial of its motion to intervene in the Nast Litigation. Beazley contacted Armstrong's appellate division, headed by former Missouri Supreme Court Chief Justice William Ray Price (also a Defendant in this case), to handle the appeal. On June 17, 2015, Armstrong agreed to handle the appeal, and on June 23, 2015, Armstrong and Beazley executed a formal retainer agreement.

On July 7, 2015, Armstrong filed a renewed motion to intervene and to void the judgment of the trial court in the Nast Litigation. This renewed motion was filed just two days prior to the deadline for such a post-judgment motion to be filed and heard by the trial court before the trial court lost jurisdiction pursuant to Missouri Rule of Civil Procedure 75.01.[7] The trial court in the Nast Litigation did not rule on Beazley's motion

---

[6] Beazley also filed a declaratory judgment action in this Court on June 11, 2015, seeking a declaration that the judgment in the Nast Litigation could not be enforced against Beazley. *See Beazley Furlonge LTD v. Gateway Ambulance Serv., LLC*, No. 4:15CV918 JCH (E.D. Mo. filed June 11, 2015). That action was stayed on September 9, 2015, pending resolution of Nast's garnishment action in state court. No. 4:15CV918 JCH, 2015 WL 5254416, at *8 (E.D. Mo. Sept. 9, 2015).

[7] "Rule 75.01 provides that the trial court retains control over judgments during the 30–day period after entry of judgment and may, after giving the parties an opportunity to

to intervene before July 9, 2015, and, having been divested of jurisdiction on that date, dismissed the motion thereafter for lack of jurisdiction.

On September 8, 2015, Armstrong filed a notice of appeal of the trial court's denial of Beazley's renewed motion to intervene in the Nast Litigation. Based on this appeal, Beazley sought to stay Nast's garnishment action. *Jean-Robert Nast, et al. v. Certain Underwriters at Lloyd's of London, et al.*, Cause No. 1522-CC09864 (Mo. Cir. Ct., Oct. 14, 2015). Beazley argued that, as Gateway's insurer and indemnitor, it had a right to intervene in the Nast Litigation. *Id*. Beazley asserted that it would be in the interest of judicial economy to stay the garnishment action until resolution of the Nast Litigation appeal because Beazley was raising same defenses to the judgment in both proceedings. *Id*.

On November 2, 2015, Armstrong wrote a letter to Beazley expressing its concerns as to whether the denial of Beazley's motion to intervene in the Nast Litigation was properly preserved for appellate review and whether, therefore, a potential conflict of interest existed between Beazley and Armstrong. That letter advised Beazley to consider and decide, with the advice of independent counsel, whether it wanted Armstrong to continue representing Beazley. Beazley authorized Armstrong to continue with the

---

be heard and for good cause, vacate, reopen, correct, amend or modify its judgments within that time period." *Spicer v. Donald N. Spicer Revocable Living Tr.*, 336 S.W.3d 466, 468 (Mo. 2011) (authored by Chief Justice Price). Rule 81.05 permits an extension of that period for up to 90 days upon the timely filing of certain post-judgment motions, such as a motion for a new trial, but Rule 81,05 is "expressly limited to parties," rather than proposed intervenors like Beazley. *See id.* at 470. As such, where a non-party's motion to intervene "is not ruled on" within the 30 days after entry of judgment, the trial court "los[es] jurisdiction" to rule on such a motion. *Id.*

7

representation.[8]  Beazley alleges that on November 6, 2015, Armstrong "further acknowledged in writing that its malpractice caused 'potential conflicts between Beazley and Armstrong Teasdale' and agreed 'to absorb any fees or expenses related to these issues.'"  ECF No. 97 at 25.

On February 5, 2016, the state court in the garnishment action denied Beazley's motion to stay.  *Jean-Robert Nast, et al. v. Certain Underwriters at Lloyd's of London, et al.*, Cause No. 1522-CC09864 (Mo. Cir. Ct., Feb. 5, 2016).  The court reasoned that it "perceive[d] no prejudice to Beazley if this case moves forward, even if the Court of Appeals should rule in its favor with respect to the underlying judgment."  *Id*.  The court further stated that Beazley had failed to provide a compelling argument as to why issues related to the propriety of the underlying judgment should be litigated in the underlying case as opposed to the garnishment action.  *Id*.

On April 26, 2016, the Missouri Court of Appeals issued an initial opinion dismissing Beazley's appeal in the Nast Litigation for lack of jurisdiction, based on the trial court having lost jurisdiction before Beazley's renewed motion to intervene was filed and heard.  On May 17, 2016, Beazley asked Armstrong to agree to defend and indemnify Beazley in the Nast Litigation appeal and in the equitable garnishment action.[9]  On May 19, 2016, Armstrong sought to withdraw from representing Beazley further, which Beazley opposed.

---

[8]     Beazley does not allege the date on which it provided such authorization.

[9]     Beazley does not allege that Armstrong agreed to indemnify Beazley.

8

Thereafter, on June 9, 2016, Armstrong again sought Beazley's authorization to continue to represent Beazley by seeking further review in the Nast Litigation as a result of an intervening decision by the Missouri Supreme Court in *State ex rel. Koster v. ConocoPhillips Co.*, 493 S.W.3d 397 (Mo. Sup. Ct. June 28, 2016) (holding that an order denying a motion to intervene is incorporated into a final judgment). Beazley authorized Armstrong to proceed, which Armstrong did.

In light of *Koster*, he Missouri Court of Appeals thereafter withdrew its April 26, 2016 opinion in the Nast Litigation, and issued a new opinion on July 26, 2016. In the new opinion, the appellate court affirmed the trial court's denial of Beazley's oral motion to intervene because the motion did not comply with Missouri Rule of Civil Procedure 52.12(c), requiring such motions to be in writing and served on the parties. The appellate court then dismissed the appeal of the trial court's denial of Beazley's renewed motion, holding that the trial court correctly found that it lost jurisdiction under Rule 75.01 and that, therefore, the appellate court also lacked jurisdiction to hear the appeal. Armstrong sought transfer to the Missouri Supreme Court, which was finally denied on November 22, 2016.

Meanwhile, Beazley continued litigating the garnishment action filed by Nast, including by filing and briefing a motion for summary judgment on September 6, 2017. In that motion, Beazley argued that Gateway breached its insurance contract with Beazley by entering into the 065 Agreement with Nast even though Beazley provided a complete defense, and that, therefore, Gateway was no longer entitled to coverage. *Jean-Robert Nast, et al. v. Certain Underwriters at Lloyd's of London, et al.*, Cause No. 1522-

9

CC09864 (Mo. Cir. Ct., Sept. 6, 2017). Nast opposed Beazley's motion, arguing that Beazley first breached the insurance contract by its refusal to settle Nast's claims in bad faith and that, therefore, Gateway was permitted to enter the 065 Agreement. Before the court ruled on Beazley's motion, the parties reached a settlement by which, as noted above, Beazley paid Nast $2.5 million. The garnishment action was therefore dismissed with prejudice on May 18, 2018.

Beazley filed the current action in the Southern District of New York on March 13, 2018. Beazley asserts that Defendants' mishandling of the Nast Litigation gives rise to claims of legal malpractice and unjust enrichment (in the form of attorneys' fees) against all Defendants. Beazley further asserts claims against Brown & James only for breach of fiduciary duty, fraud, and conspiracy. The fraud and conspiracy claims are based on Brown & James failing to immediately disclose, and agreeing with Gateway to actively conceal, the 065 Agreement.[10]

Specifically, Beazley alleges that Brown & James breached its duties to Beazley by: (1) failing to timely withdraw from the Nast Litigation when it became clear that a conflict of interest had arisen between Gateway and Beazley; (2) failing to disclose the facts and circumstances surrounding the 065 Agreement between Gateway and Nast until the morning of the June 8, 2015 bench trial in the Nast Litigation; and (3) failing to appear at the June 8, 2015 bench trial to protect Beazley's interests.

---

[10] Beazley also asserted a breach of fiduciary duty claim against Armstrong and a negligence claim against all Defendants, but Beazley has since voluntarily withdrawn those claims as duplicative of the legal malpractice claims. ECF No. 85 at 27 n.3 (incorporated by reference in ECF No. 103).

Beazley alleges that Armstrong breached its duties to Beazley by: (1) failing to file the renewed motion to intervene in the Nast Litigation sufficiently in advance of the 30-day period for the trial court to timely rule upon it; and (2) failing to contact or otherwise press the trial court for a ruling on the renewed motion before the trial court lost jurisdiction under Rule 75.01.

Beazley alleges that but for Defendants' breaches, Beazley would have avoided the "$5,200,000.00 in attorneys' fees, costs, expenses and settlement funds to defend and protect itself against Nast's efforts to collect the Judgment." ECF No. 97 at 30. Beazley alleges that its damages "extend to the amounts it paid Defendants in connection with the Nast Litigation, as well as costs and fees associated with this litigation." *Id*. Specifically, Beazley alleges that it paid $2,500,000 to Nast in settlement of the garnishment action and "$2,700,000 of attorneys' fees, costs, and expenses to defend and protect itself against Nast's efforts to collect on the judgment." *Id.* at 36.

With respect to its unjust enrichment claims, Beazley further alleges that it paid Brown & James more than $16,000 and Armstrong approximately $309,786 for the "handling and defense of the Nast Litigation and [Defendants'] representation of Beazley's interests in relation thereto." *Id.* at 36. Beazley alleges that Defendants have been unjustly enriched by charging Beazley for these legal fees and costs where they failed to properly handle and defend the Nast Litigation. *Id.*

## **ARGUMENTS OF THE PARTIES**

With respect to the legal malpractice claims, Defendants argue that Beazley has failed to plead causation because it has not alleged that it would have been granted leave

to intervene in the Nast Litigation and would have obtained a better outcome but for the alleged negligence of Defendants.  Defendants argue that, at the time of the Nast Litigation, an insurer had no right to intervene in a lawsuit for damages against its insured, even if intervention was timely sought.  Although § 537.065 was amended, effective August 28, 2017, in order to grant insurers a right to intervene in a lawsuit for damages against its insured, the Nast Litigation concluded in 2016.  At that time, Defendants argue, Beazley had no right to intervene in the litigation as a matter of law, and as such, could not have obtained a better outcome in the Nast Litigation even if Defendants had timely filed and preserved a motion to intervene.  Moreover, Defendants argue that even if Beazley had been allowed to intervene, Beazley has failed to plausibly allege that it would have been able to set aside the judgment against its insured or to obtain a more favorable settlement.

Next, Brown & James argues that Beazley's breach of fiduciary duty and fraud claims fail because Beazley cannot establish causation for the reasons stated above.  Brown & James separately contends that the breach of fiduciary duty claim fails because it is duplicative of the legal malpractice claim.  Further, Brown & James maintains that Beazley's claim of civil conspiracy cannot stand on its own and, in any event, Beazley fails to adequately allege the elements of conspiracy.

Finally, all Defendants argue that Beazley's unjust enrichment claims fail because Beazley has not plausibly alleged that Defendants' retention of attorneys' fees is unjust.

In response, Beazley argues that but for Defendants' negligence, it would have been granted the right to intervene (at the trial court or appellate levels) or, if intervention

was denied, it would have been in a more favorable position for the purpose of settlement negotiations because the judgment in the Nast Litigation would have been stayed pending appeal. Thus, Beazley argues that it has sufficiently pled causation and damages with respect to its claims.

Beazley further argues that its breach of fiduciary duty claim against Brown & James is not duplicative of the legal malpractice claim because Beazley alleges that Brown & James breached its duty of loyalty, separate and apart from its negligence. Finally, Beazley argues that it has adequately pled unjust enrichment claims against both Defendants by alleging that "it would be unjust for these firms to keep these fees as a result of their failures to properly handle and defend the Nast litigation, and protect Beazley's interests." ECF No. 85 at 28.

## DISCUSSION

To survive a motion to dismiss, a plaintiff's claims must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

**Legal Malpractice (Against All Defendants)**

"To state a claim for legal malpractice under Missouri law, the [plaintiff] must establish four elements: (1) that an attorney-client relationship existed; (2) that the

13

defendant attorneys acted negligently or in breach of contract; (3) that such acts were the proximate cause of the [plaintiff's] damages; and (4) that, but for the defendant attorneys' conduct, the [plaintiff] would have been successful in the prosecution of their underlying claim." *Barton*, 841 F.3d at 753 (citing *Nail v. Husch Blackwell Sanders, LLP*, 436 S.W.3d 556, 561 (Mo. 2014)).

"[C]ausation in fact requires proof that 'but for' the attorney's negligence, the result would have been different." *Id.* "By proving that the result of the underlying proceeding would have been different 'but for' the attorney's negligence, the plaintiff also proves that the damages—the difference between what the result *would have been* and what it *was*—were the reasonable and probable consequence of the defendant's negligence." *Nail*, 436 S.W.3d at 562 (emphasis in original). However, "[t]he causal connection cannot be based on speculation or conjecture." *Id.* at 563.

Beazley's primary theory of legal malpractice is that Defendants acted negligently in failing to properly raise and preserve Beazley's motion to intervene in the Nast Litigation. The Court agrees with Defendants that, at the time of the Nast Litigation, even a properly filed and preserved motion to intervene would have been denied under Missouri law. Thus, Beazley cannot establish causation and its legal malpractice claims must fail. *See Cline v. Teasdale*, 142 S.W.3d 215, 220 (Mo. Ct. App. 2004) ("[A]n attorney is not negligent in failing to engage in a futile act.").

Missouri courts have long held that "'[t]he liability of an insurer as potential indemnitor of the judgment does not constitute a direct interest in such a judgment so as to implicate intervention as of right in that action.'" *Sherman v. Kaplan*, 522 S.W.3d

14

318, 326 (Mo. App. W.D. 2017) (quoting *Whitehead v. Lakeside Hosp. Ass'n*, 844 S.W.2d 475, 479 (Mo. App. W.D. 1992)).[11]

> That is because the insurer does not either gain or lose from the direct operation of that judgment. Instead, the insurer has a forum by declaratory judgment action or in the action to compel indemnity for the judgment that affords the insurer full scope to protect its interests against the contention of coverage, and hence liability for the judgment. In other words, in the third party liability claim context, the insurance carrier has no right to intervene in litigation between its policyholder and the third party; the carrier can participate in the litigation only pursuant to its contractual obligation to defend the policyholder. If either party to the insurance contract breaches in such a way that results in the insurer not providing a defense to the insured during the underlying lawsuit, that matter may be raised only in the proper forum, i.e., a declaratory judgment action or a subsequent garnishment action.

*Id.* (internal citations omitted).

The amendment to § 537.065 creating a right to intervene became effective only in August of 2017, well after the Nast Litigation concluded and, therefore, could not have created a right for Beazley to intervene in that litigation even if Defendants properly sought and preserved a motion to intervene on Beazley's behalf.[12]

Beazley attempts to distinguish the line of Missouri cases discussed above based on the fact that Beazley did not attempt to deny coverage. Indeed, Armstrong attempted to assert such an argument on Beazley's behalf in the Nast Litigation. But neither Beazley nor the Court has identified a Missouri case finding such a distinction to be

---

[11] Although Beazley correctly notes that *Sherman* was decided in 2017, immediately before § 537.065 was amended and more than a year after the events at issue in this case, *Sherman* relied upon well-established Missouri caselaw dating back decades.

[12] Even as amended, § 537.065 does not confer an "unconditional" right to intervene, but only a "temporally limited right" pursuant to specified procedures. *See Britt v. Otto*, No. WD 81830, 2019 WL 1333098, at *5, *6, n.7 (Mo. Ct. App. Mar. 26, 2019).

15

material. Rather, the settled principle at the relevant time was that the proper forum for insurers like Beazley to protect their interests—including to challenge their insured's entry into a § 537.065 agreement—was a declaratory judgment action or in the proceeding to compel indemnity for the judgment. *See, e.g.*, *Borgard v. Integrated Nat. Life Ins. Co.*, 954 S.W.2d 532, 536–37 (Mo. Ct. App. 1997); *Whitehead*, 844 S.W.2d at 480–81.

Next, Beazley attempts to rely on Missouri cases involving intervention by uninsured and underinsured motorist carriers in lawsuits against the uninsured or underinsured motorist. But those cases are plainly inapplicable. As the court explained in *Charles v. Consumers Insurance*, 371 S.W.3d 892 (Mo. Ct. App. 2012):

> In the third party liability claim context, the insurance carrier has no right to intervene in litigation between its policyholder and the third party; the carrier can participate in the litigation only pursuant to its contractual obligation to defend the policyholder, This is true because the insurance carrier has no direct interest in a lawsuit for damages filed against its policyholder by a third party . . . .
>
>     \* \* \*
>
> In contrast, Missouri appellate opinions have consistently held that an uninsured or underinsured motorist carrier has an absolute right to intervene in a lawsuit brought by its policyholder against an uninsured or underinsured motorist. In the uninsured-underinsured motorist context, when the insurer seeks intervention, it steps into the shoes of the alleged torfeasor and assumes an adversarial position to that of the insured. …

371 S.W.3d at 897-98 (internal citations omitted); *see also Whitehead*, 844 S.W.2d at 479-80 (relying on similar analysis to reject an insurer's citation to "distinctive" uninsured motorist cases to support intervention in a third-party liability claim).

16

Lastly, Beazley suggests, in a single paragraph, that it "could have received permissive intervention" under Missouri Rule of Civil Procedure 52.12(b) (ECF No. 85 at 25). As noted above, in ruling on Beazley's oral motion to intervene, the trial court in the Nast Litigation indicated that it was not inclined to permit Beazley to intervene because the question of Beazley's responsibility to pay any part of the judgment was not at that time before the court. Beazley has not alleged any facts to plausibly suggest that the trial court would have granted a properly filed motion for permissive intervention. And because a trial court's denial of permissive intervention is reviewed under the exceedingly deferential abuse-of-discretion standard, it likely would not have been overturned on appeal. *See State ex rel Nixon v. Am. Tobacco Co.*, 34 S.W.3d 122, 131 (Mo. 2000). As such, Beazley's contention that it could have received permissive intervention is too speculative to support its legal malpractice claim.

Moreover, even if Beazley could establish that it would have been permitted to intervene in the Nast Litigation, it has failed to plausibly allege that it would have obtained a better outcome. Notably, Beazley in fact litigated the very same arguments that it intended to litigate in the Nast Litigation—regarding the propriety of the 065 Agreement—in the garnishment proceeding brought by Nast, which was the "proper forum" to do so at the time. And Beazley ended up settling for a fraction of the total judgment in the Nast Litigation. Beazley has not plausibly alleged that a mere change in forum (the Nast Litigation as opposed to the garnishment proceeding) would have resulted in a more favorable outcome. Such a contention amounts to conjecture.

17

Finally, Beazley's alternative argument, that even if a properly filed and preserved motion to intervene were denied, the judgment in the Nast Litigation would have been stayed and that stay, somehow, would have led to a better outcome, is again too speculative to support its claim. Indeed, Beazley sought to stay the garnishment proceedings pending its appeal, and its motion to stay was denied.

For these reasons, the Court will grant Defendants' motion to dismiss Beazley's legal malpractice claims.

**Breach of Fiduciary Duty, Fraud, and Conspiracy (Against Brown & James)**

Beazley's failure to plausibly allege causation with respect to its claimed damages likewise defeats its breach of fiduciary duty and fraud claims against Brown & James. *See Klemme v. Best*, 941 S.W.2d 493, 496 (Mo. 1997) (listing causation as an element of a breach of fiduciary duty claim); *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. 1988) (same for fraud). And civil conspiracy is "not a separate and distinct action." *Cent. Tr. & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 324 (Mo. 2014). The Court will grant Brown & James motion to dismiss these claims.

**Unjust Enrichment (Against All Defendants)**

"Unjust enrichment requires a showing that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Hargis v. JLB Corp.*, 357 S.W.3d 574, 586 (Mo. 2011) (citations omitted). "The third element . . . is considered the most significant and the most difficult of the elements." *Sparks v. PNC Bank*, 400 S.W.3d 454, 460 (Mo. Ct. App. 2013).

As an initial matter, the parties have not cited and the Court has not identified any Missouri case permitting a plaintiff to recover attorneys' fees under an unjust enrichment theory of this type. Nevertheless, there is authority for the proposition that forfeiture of attorneys' fees may be appropriate to remedy a lawyer's improper conduct.

In particular, the Restatement (Third) of the Law Governing Lawyers provides that "[a] lawyer engaging in clear and serious violation of duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter." Restatement (Third) of the Law Governing Lawyers § 37 (2000); *see also Int'l Materials Corp. v. Sun Corp.*, 824 S.W.2d 890, 895 (Mo. 1992) ("Complete forfeiture . . . is warranted only when a lawyer's clear and serious violation of a duty to a client is found to have destroyed the client-lawyer relationship and thereby the justification for the lawyer's claim to compensation.").[13]

But such an equitable recovery of attorneys' fees would only be appropriate appropriate for "clear and serious" violations. Considerations relevant to that question include "the gravity and timing of the violation, its willfulness, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies." Restatement (Third) of the Law Governing Lawyers § 37. "Whether [an attorney's] breach was so egregious as to require the forfeiture of any

---

[13] To the extent Beazley seeks restitution of the attorneys' fees paid to Defendants, rather than compensatory damages, its unjust enrichment claim is not necessarily duplicative of its legal malpractice and breach of fiduciary duty claims. *See Nordwind v. Rowland*, 584 F.3d 420, 434 (2d Cir. 2009) (holding that an unjust enrichment claim seeking disgorgement of attorneys' fees may not be redundant of a breach of fiduciary duty claim where the plaintiff "sought a restitutionary remedy rather than damages").

compensation to which he may otherwise have been entitled is a discretionary and fact-dependent question to be resolved by weighing all of the relevant equities," a function that must be performed by the trial court. *See Johnson v. Gudmundsson*, 35 F.3d 1104, 1116 (7th Cir. 1994); *Burrow v. Arce*, 997 S.W.2d 229, 245 (Tex. 1999).

The facts alleged by Beazley may be insufficient to justify forfeiture here. However, in light of the fact-specific nature of the inquiry, the Court concludes that the question is better suited for resolution at a later stage, such as summary judgment, after further development of the record. Therefore, the Court will deny Defendants' motion to dismiss Beazley's unjust enrichment claims.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motions to dismiss the second amended complaint are **GRANTED in part and DENIED in part**, as set forth above. ECF Nos. 99 & 101. The motions are **DENIED** solely with respect to Plaintiffs' unjust enrichment claims against both Defendants; the motions are otherwise **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' motions to dismiss the first amended complaint are **DENIED as moot**. ECF Nos. 77 and 79.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 29th day of May, 2019.